ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

KATHERINE L. WAWRZYNIAK (CABN 252751)
Chief, Criminal Division

DANIEL N. KASSABIAN (CABN 215249)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7034
    Facsimile: (415) 436-7234
    daniel.kassabian@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br>   v. <br> GREGORY CHARLES MORTON III, <br>     Defendant. | CASE NO. CR 22-00225-JD <br><br> UNITED STATES' SENTENCING MEMORANDUM |

## I.    SYNOPSIS

On February 6, 2023, defendant Gregory Morton pleaded guilty to a single count of unlawfully possessing a firearm on March 17, 2022, in violation of 18 U.S.C. § 922(g)(1). At the time of this offense, Mr. Morton had been released just days earlier from Marin County Jail for being in unlawful possession of two firearms that were located in his rental car. And just a few months prior to that, he had spent over five years in San Francisco County Jail for his involvement in the shooting death of two people. In fact, when illegally possessed the firearm on March 17, Mr. Morton was still on pretrial release awaiting sentencing on the state court case for that shooting—i.e., after he pleaded guilty, and after the state court judge warned him that Mr. Morton was a felon who could not possess firearms. Those five years in jail, including in-custody rehabilitative programming there, and the support of his

family and community while released, did not deter Mr. Morton from acquiring a firearm within days of his release, while wearing an ankle monitor and being subject to search. His flagrant disregard of the law after spending years in jail and his criminal history demonstrates that Mr. Morton poses a substantial threat to the community and requires a guidelines-range sentence. Here, consistent with the plea agreement, the government recommends a low-end Guidelines sentence of 30 months, followed by three years of supervised release, as sufficient but no greater than necessary to meet the purposes of sentencing.

## II.   OFFENSE CONDUCT

On March 17, 2022 at 6:25 pm, San Francisco Sheriff's Department deputies and San Bruno Police Department officers sought to take Mr. Morton into custody on a no bail warrant for violating his supervised release conditions. Deputies had used Mr. Morton's ankle monitor to track him to the Tanforan Shopping Mall in San Bruno. Upon seeing Mr. Morton walking through the first level of the theater's parking lot, they drove their patrol cars towards him and activated their cars' red and blue lights. Mr. Morton did not surrender, but instead fled by running through the parking lot. Officers quickly apprehended him and searched Mr. Morton incident to arrest. They found a Glock .40 caliber semi-automatic pistol in Mr. Morton's waistband; it was loaded with 30 rounds of ammunition in an extended magazine.

The above-described offense occurred while Mr. Morton was on supervised release with search conditions and an ankle monitory, while awaiting sentencing in San Francisco Superior Court case no. 19001295. His release came after spending five years in custody, thus having served a 10-year sentence with good time credits for two counts of violating Cal. Penal Code § 246 (shooting at an occupied vehicle). Also, he had been arrested just four days earlier, on March 13, by the American Canyon Police Department for being a felon in possession of a firearm.[1] That arrest resulted from officers finding two unregistered, loaded handguns under the front side of the front passenger seat of the car Mr. Morton had

---

[1] Mr. Morton has objected to the inclusion of the facts of Count 1 in the PSR (¶¶ 5-6) because that count is being dismissed at his sentencing. Regardless, those fact are relevant to the convicted offense because they demonstrate that Mr. Morton's arrest for that conduct did not deter him from obtaining a firearm days later, and he knew that he was a felon who could not legally possess firearms since he had been arrested on state charges for that offense mere days before the instant offense conduct.

U.S. SENT. MEMO.                                2
CR 22-00225-JD

rented and driven to Paintball Jungle: (1) a Glock .45 caliber semi-automatic pistol, and (2) a Glock .40 caliber semi-automatic pistol.

### III. SENTENCING GUIDELINES CALCULATION

The government agrees with the PSR's calculation of the Guidelines (¶¶ 14-23) as follows:

a. Base Offense Level, U.S.S.G. § 2K2.1(a)(4)(B)     20

   *Offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine; and the defendant was a prohibited person at the time he committed the instant offense*

b. Specific Offense Characteristics     N/A

c. Acceptance of Responsibility, U.S.S.G. § 3E1.1(a)     -3

d. Total Offense Level     17

The PSR calculates Mr. Morton's Criminal History Category (CHC) as III, because of (1) his prior felony conviction in San Francisco Superior Court case no. 19001295 resulting in a 10-year prison sentence (served in local jail while detained), (2) his 2014 conviction for misdemeanor offense resulting in probation, and (3) his being under a pretrial supervision when he committed the instant offense. PSR ¶¶ 26-30. Given the Total Offense Level of 17 and CHC of III, Mr. Morton's Guidelines range is 30 to 37 months' imprisonment. *Id*. ¶ 59.

### IV. LEGAL STANDARD

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

- the nature and circumstances of the offense and the history and characteristics of the defendant;

- the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

- the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

## V.     SENTENCING RECOMMENDATION

Mr. Morton has a prior serious firearms offense: shooting at an occupied vehicle. On March 9, 2015, at about 9:30 am (i.e., broad daylight), there was a double-homicide shooting of an unarmed 18- and 19-year-old at the Crocker Amazon Playground[2] by two unknown suspects—no one saw the murders but witnesses nearby heard 9 or more gun shots fired into their car, killing them. (https://sfist.com/2015/03/10/local_teens_shot_dead_at_sf_playgro/) On March 25, 2015, Mr. Morton was arrested and detained as one of the perpetrators in the shooting. The San Francisco DA's Office initially charged Mr. Morton and another defendant by complaint, and then by Information following an 8-day preliminary hearing, with two counts of violating Cal. Penal Code § 187(a) (first degree, premeditated murder) with firearm and gang enhancements, and two counts of violating Cal. Penal Code § 246 (discharge of a firearm at an occupied vehicle) with the same enhancements. On October 2021, pursuant to a plea agreement, Mr. Morton pled no contest to the violations of Cal. Penal Code § 246 (felonies under California law) to an amended Information that made clear that he was not being accused of being the actual shooter but was nonetheless involved in the shooing that resulted in the deaths.

In a bid to obtain pretrial release after that guilty, Mr. Morton filed a motion positing that he had been rehabilitated by participating in programming while in San Francisco jail: Mr. Morton had attended "Keys to College" accredited preparatory classes while in jail; he also attended the Young Men's Reentry Program offered by Community Works; and he participated in the Performing Arts and Community Exchange program offered by the University of San Francisco. This programming apparently did not leave lasting changes, as Mr. Morton continued to acquire firearms shortly after his release. Once arrested and brought back to court for his firearms offenses committed during his brief time on supervised release, Mr. Morton was sentenced on June 25, 2022 to 10 years with credit for time served.

Any hardships Mr. Morton has endured in his past must be viewed against the substantial danger he continues to pose to the community and the need to deter his future criminal conduct. Mr. Morton's criminal history shows that he has been unable—indeed, unwilling—to live a law-abiding life. Any

---

[2] This playground in San Francisco has a tot lot, a skate park, and new soccer fields used by recreational and school teams of all ages throughout the year.

effort to suggest that a move to Los Angeles will result in a law-abiding life must be juxtaposed with the reality that it is another major city with firearms that are just as easily accessible there.  Nor is Mr. Morton's past trauma, and any excuse that he possessed the firearm to protect himself given his involvement in the 2015 shooting, a valid excuse or even a mitigator for this offense.  Indeed, the very need a felon might have for protection—i.e., because of their past violence toward others—exposes others to danger that laws like 18 U.S.C. § 922 seek to avoid.

In sum, Mr. Morton has not been deterred from committing firearms offenses by his past state sentences, and his history shows he poses a substantial danger to the community.  For those reasons, the government requests that the Court order a sentence of 30 months' imprisonment, which is reasonable, consistent with the government's plea agreement, and sufficient but not greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a).

DATED:  May 30, 2023                                          Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

         /s/
DANIEL N. KASSABIAN
Assistant United States Attorney
2102-8717-7472, v. 3